**FILED**
**Feb 14, 2020**
**10:37 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Katalin Minnig, | ) | Docket No.: 2014-01-0015 |
| **Employee,** | ) | |
| v. | ) | |
| Walmart Associates, Inc., | ) | State File No.: 74443-2014 |
| **Employer,** | ) | |
| and | ) | |
| New Hampshire Ins. Co., | ) | Judge Thomas Wyatt |
| **Carrier.** | ) | |
| | ) | |

## COMPENSATION ORDER GRANTING SUMMARY JUDGMENT

This case came before the Court on Walmart's Motion for Summary Judgment. Walmart argued it is entitled to summary judgment on Katalin Minnig's petition to set aside the Court's order approving the settlement of her back-injury claim. Ms. Minnig argued summary judgment is inappropriate because mental confusion from Post-Traumatic Stress Disorder (PTSD) affected her understanding that the settlement included her back claim. She also asserted that her former attorney and Walmart committed fraud by negotiating a settlement of her back claim against her instructions.

For the following reasons, the Court grants Walmart's motion and dismisses Ms. Minnig's claim.

### History

Ms. Minnig brought three workers' compensation claims during her employment at Walmart. Two claims primarily involving her left wrist arose before the creation of the Court of Workers' Compensation Claims.[1] Thus, the Court does not have jurisdiction over them. The Court does have jurisdiction over the third claim, involving Ms. Minnig's back.

---

[1] Ms. Minnig claimed that the latter of these claims also involved alleged feet and psychological injuries.

1

Ms. Minnig reached maximum medical improvement for her wrist injuries during the pendency of her back claim. Walmart initially accepted Ms. Minnig's back claim but later denied it after receiving a physician's opinion that the injury was not work-related. At or around this time, Ms. Minnig retained Attorney W. Holt Smith to represent her. The parties eventually scheduled a Benefit Review Conference for July 22, 2015.

Ms. Minnig and Mr. Smith disagree about the extent of Mr. Smith's representation at the time of the BRC. Ms. Minnig admitted into evidence Mr. Smith's letter to her dated July 6, 2015, which read, in part, "[a]ccording to your instructions, we will no longer represent you in the back injury case. I recommend that we proceed with the wrist injury case."[2] Mr. Smith testified by affidavit that, before the BRC, Ms. Minnig "had asked me to agree to represent her in all three (3) of her pending workers' compensation claims and I agreed."

Ms. Minnig, Mr. Smith, and Walmart's lawyer, Mary Elizabeth Maddox, attended the BRC on July 22, 2015. Ms. Minnig asserted in her petition and an affidavit that she did not expect the BRC to include the back claim because she had not reached maximum medical improvement from that injury. However, Walmart made a offers to settle all of Ms. Minnig's claims. At the BRC, Ms. Minnig and Mr. Smith executed Mediated Settlement Agreements for an $18,000 settlement of the wrist claims and a $7,000 settlement of the back claim. All three settlements closed future medical benefits.

Six days later, Ms. Minnig, Mr. Smith, and Ms. Maddox presented the three settlements for approval.[3] Ms. Minnig, Mr. Smith, and Ms. Maddox presented the Court separate, signed Settlement Agreements for each claim that set forth terms identical to those in the signed Mediated Settlement Agreements. The parties designated the back settlement "doubtful and disputed" because of the adverse causation opinion on which Walmart denied the claim.

The Settlement Agreement covering the back claim contained language that, by signing the agreement, Ms. Minnig acknowledged she had the opportunity to ask questions during the approval hearing; entered into the agreement voluntarily and with full knowledge of her rights and responsibilities; and knowingly waived her right to proceed to trial. The agreement also included language that Ms. Minnig's signature acknowledged that she received notification about "the possibility or probability of later manifestations of injury, future medical expenses and additional lost time," and that she "voluntarily" agreed to resolve the claim "for all time."[4]

---

[2] Walmart objected to the admission of the letter on hearsay grounds. The Court overrules the objection because the letter is consistent with Mr. Smith's affidavit testimony, which Walmart submitted, and thus offered for reasons other than the truth of the matter asserted

[3] The undersigned conducted the approval hearing. He considered the back settlement under his authority as a Workers' Compensation Judge and the wrist settlements under his authority as a Specialist 4 for the Bureau.

[4] The agreements Ms. Minnig signed on the wrist claims contained almost identical language. Ms. Minnig initialed questionnaires on the wrist claims acknowledging, among other matters, her understanding of the finality of the

The Court interviewed Ms. Minnig in person, in the presence of counsel, during the approval hearing. It informed her of her right to try her claims in court; that the settlements required her to waive all other claims, including future medical benefits; and that, if she prevailed at trial, the Court would award future medical benefits. The Court entered an order approving the back settlement after Ms. Minnig voiced understanding and agreement to the proposed settlement terms and the information the Court discussed with her.[5]

Following the approval hearing, Ms. Minnig received checks from Walmart totaling $25,000. She executed them and received the net proceeds after deduction of attorney's fees and expenses.

Four years passed before Ms. Minnig petitioned to set aside the settlement. She claimed she filed the petition less than a year after she read her settlement papers and "discovered" they included her back claim. She asked the Court to set aside the approval order because PTSD prevented her from competently participating in the approval hearing. She alleged that her PTSD made it difficult to think clearly while in the presence of male authority figures. She did not submit medical or psychiatric evidence supporting her PTSD-related allegations.

Ms. Minnig also alleged fraud as a basis for setting aside the approval order. She claimed that she never gave Mr. Smith authority to represent her in, or negotiate a settlement of, the back claim. She also asserted that the inclusion of settlement papers on her back claim at the approval hearing constituted fraud because she had no reason to expect that Mr. Smith would fail to follow her instruction against negotiating the back claim. She also alleged that she did not expect to address the back claim at the BRC and approval hearing because she believed an employee could not settle a claim before attaining maximum medical improvement for the underlying injury.

In support of summary judgment, Walmart relied on the affidavits of Attorneys Smith and Maddox to negate Ms. Minnig's alleged grounds for reopening her back claim. On the incapacity issue, both attorneys testified that they personally observed Ms. Minnig during the BRC and approval hearing and detected no indication of diminished mental capacity.[6] In fact, Mr. Smith testified, "I did not coerce, mislead, or otherwise force or control Ms. Minnig's actions or decision." Walmart also submitted the sworn report of a physician who concluded, after performing a review of records, that Ms. Minnig did not

---

settlements and her waiver of the right to trial.

[5] The Court followed the same procedure in approving the wrist settlements, except that, in the wrist settlements, it personally asked Ms. Minnig the questions on the questionnaires and obtained her initials after she answered the questions.

[6] Ms. Minnig objected to the admission of the affidavits on the ground the attorneys were not qualified to assess her mental capacity. The Court overrules the objection on the ground that lay witnesses can testify as to rationally based perceptions from personal observation. Tenn. R. Evid. 701(a)(1) (2019).

suffer from PTSD or operate under mental incapacity at the time she participated in the BRC and approval hearing.

Regarding the fraud issue, Mr. Smith conceded that, at one point before the BRC, Ms. Minnig discharged him from representing her on the back claim. However, he testified that, before the date of the BRC, Ms. Minnig "had asked me to agree to represent her in all three (3) of her pending workers' compensation claims and I agreed."

On February 6, 2020, Ms. Minnig filed numerous responses to the summary judgment motion.[7] She referenced Attorney Smith's letter to support the premise that she did not expect or authorize him to negotiate the back claim. She provided unsworn descriptions of the level, extent, and manifestations of her alleged PTSD. She cited numerous statutory provisions outside the Workers' Compensation Law in support of her fraud position. Finally, on the day of the hearing, she filed a document from the Veteran's Administration that purported to indicate the agency's determination of total disability on the basis of PTSD.[8]

## Analysis

The 2013 Reform Act conferred upon workers' compensation judges the authority to approve settlements of workers' compensation claims for injuries arising on and after July 1, 2014. Tenn. Code Ann. § 50-6-240(a) (2019). This subsection provides that the written instrument by which the Court memorializes approval of a settlement becomes a judgment.

In *Johnson v. Pilgrim's Pride, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 20, at *8-13 (Apr. 27, 2016), the Appeals Board recognized two post-judgment motions by which a party can challenge a workers' compensation judge's approval order: a motion to reconsider under Tennessee Rule of Civil Procedure 59.04 and a motion for relief from a judgment under Rule 60.02. The Court considers that Ms. Minnig's petition falls under the latter as she seeks to set aside the judgment approving her settlement and proceed to trial on her back claim.

In *Payne v. D & D Elec.*, 2017 Tenn. LEXIS 215, at *7-8 (Tenn. Workers' Comp. Panel Apr. 18, 2017), the Supreme Court set forth the following standard governing consideration of a summary judgment motion in a workers' compensation claim:

A party who moves for summary judgment, but who does not bear the burden of proof at trial, may satisfy its burden of production

---

[7] Walmart objected to these filings because they were made one day after Ms. Minnig's deadline for filing responses. The Court overrules the objection because Walmart's thorough and vigorous response to the filings indicates it suffered no prejudice due to the late-filing.

[8] The Court sustains Walmart's hearsay objection on this letter.

4

under Rule 56 either by "affirmatively negating an essential element of the nonmoving party's claim" or by showing "that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense[.]" The nonmoving party must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party.

(Internal citations omitted.)

The dispositive issue for summary judgment is Ms. Minnig's request for relief from the judgment approving her back settlement. Rule 60.02 provides the following grounds for seeking relief from a judgment:

(1)    mistake, inadvertence, surprise or excusable neglect;
(2)    fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party;
(3)    the judgment is void;
(4)    the judgment has been satisfied, released or discharged . . .; or
(5)    any other reason justifying relief from the operation of the judgment.

Ms. Minnig argues two factual bases for relief under Rule 60.02. The first is that mental confusion from PTSD prevented her from knowing that she settled her back claim. On this allegation, Walmart presented affidavits from eyewitnesses who interacted with Ms. Minnig during the settlement process and did not observe any mental incapacity. It also provided a sworn report from a physician who concluded that she did not suffer from PTSD or mental incapacity at the time she participated in the BRC and approval hearing. Ms. Minnig countered Walmart's submissions by offering unsworn descriptions of her alleged mental condition at the time of the BRC and approval hearing.

The Court holds that Walmart's evidentiary submissions negated Ms. Minnig's allegation that she operated under mental incapacity at the approval hearing. This evidence shifted the burden to Ms. Minnig to demonstrate the existence of facts in the record that could lead the Court to rule in her favor. Ms. Minnig failed to provide evidence on which the Court could rule that she suffered from mental incapacity at the time of the BRC and approval hearing. She cannot establish mental incapacity by her own comments, and she offered no medical or psychiatric proof of incapacity. *See Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at \*31 (Jan. 30, 2018), holding that a court cannot find compensability based on an lay testimony alone, as it cannot make independent medical determinations without expert medical proof. Thus, Walmart is entitled to summary judgment on her claim that the Court should set aside the approval order because of her mental incapacity.

The Court now moves to the second issue alleged by Ms. Minnig, fraud. In *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66-67 (Tenn. 2001), the Supreme Court set forth the elements of actionable fraud as follows:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his injury.

Also, a party alleging fraud must set forth the elements of the fraud "with particularity." Tenn. R. Civ. P. 9.02 (2019).

Here, Ms. Minnig did not allege an intentional misrepresentation by Attorney Smith or by any Walmart representative that meets the description of fraud set forth above. At most, she established an issue as to whether she gave Mr. Smith authority to represent her in her back claim. However, she does not attribute to Mr. Smith any false representations made with intent to defraud her. In fact, she claimed that she did not recall what she and Mr. Smith discussed during the approval hearing. For this reason, the Court dismisses Ms. Minnig's allegations of fraud on summary judgment.

Finally, the Court holds Walmart is entitled to summary judgment because Ms. Minnig's motion to set aside was untimely. Rule 60.02 requires a party to file a motion seeking relief under grounds (1) and (2) "not more than one year after the judgment, order or proceeding was entered or taken." Ms. Minnig's allegations of mental incapacity and fraud fall under Rule 60.02 (1) and (2). However, she did not petition for relief on these grounds until more than *four* years after the Court entered the approval order. Although she claims she filed within one year after she discovered that she settled her back claim when reading her settlement papers, the Court rejects her position. Namely, Ms. Minnig did not submit evidence of mental incapacity or fraud that would support relief from the settlement order based on such late reading of papers that she signed herself to obtain settlement proceeds.

Pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.06, the Court assesses the $150.00 filing fee to Walmart to be paid to the Court Clerk within five business days of this order becoming final, for which execution may issue if necessary.

6

**IT IS ORDERED.**

**ENTERED February 14, 2020.**

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on February 14, 2020.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|------|---------------|------------------|-------|------------------|
| Katalin Minnig Employee | | X | X | Erdelyikatalin42@yahoo.com 141 Lovin Farm Road Vonore, TN 37885-6374 |
| Celeste Watson Employer Attorney | | | X | celeste@cmwatsonlaw.com |

_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**



## Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on _____     ☐ Other Order filed on _____

issued by Judge _____

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

LB-1099 rev. 01/20                    Page **1** of **2**                    RDA 11082

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries       $ _____ per month    Telephone       $ _____ per month

Electricity     $ _____ per month    School Supplies $ _____ per month

Water           $ _____ per month    Clothing        $ _____ per month

Gas             $ _____ per month    Child Care      $ _____ per month

Transportation  $ _____ per month    Child Support   $ _____ per month

Car             $ _____ per month

Other           $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                        RDA 11082